# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DALE A. WILKERSON<br><br>v.<br><br>UNIVERSITY OF NORTH TEXAS, BY AND THROUGH ITS BOARD OF REGENTS; NEAL SMATRESK, PRESIDENT; FINLEY GRAVES, INTERIM PROVOST AND VICE PRESIDENT FOR ACADEMIC AFFAIRS; WARREN BURGGREN, FORMER PROVOST AND VICE PRESIDENT FOR ACADEMIC AFFAIRS; ARTHUR J. GOVEN, FORMER DEAN, COLLEGE OF ARTS & SCIENCES; AND PATRICIA GLAZEBROOK, FORMER CHAIR, DEPARTMENT OF PHILOSOPHY AND RELIGION STUDIES | § § § § § § § § § § § § § § § § § § §   Civil Action No. 4:15-CV-00540<br>  Judge Mazzant |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Original Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. #42). After reviewing the relevant pleadings and motion, the Court finds the motion should be granted in part and denied in part.

## BACKGROUND

This case arises from the non-renewal of an employment contract for a non-tenured professor. Plaintiff, Dale Wilkerson, was originally hired by the University of North Texas ("UNT") in 2003 under a one-year term contract in the Department of Religion and Philosophy ("the Department") in the College of Arts and Sciences. At the end of his first term, his contract was renewed, he was promoted, and his duties were expanded. In 2011, UNT offered Plaintiff a

term contract for five years for the role of Principal Lecturer. Principal Lecturer is the highest level attainable at UNT for any teacher who is not tenured or on a tenure track appointment. It is customary at UNT that non-tenured teachers who have multi-year appointments can rely on continued employment until the expiration of the full term of their contract as long as their job performance meets or exceeds expectations. It is also customary for UNT to inform the professor in writing no later than April of the academic year if the professor's contract will not be renewed. The only known causes for discharge of teachers with long years of service were because of elimination or reduction of a particular program, a general reduction in force, or the commission of a serious violation of UNT's policies and procedures.

Plaintiff's complaint centers around an allegedly wrongful discharge by UNT that was based at least in part on a relationship that UNT deemed to be inappropriate. On May 31, 2013, Plaintiff was approached at a local bar by a 26-year-old female, CB. Plaintiff had briefly been introduced to CB in March 2013, but had not seen her since. At the time, CB was not, and had never been, a student or employee at UNT. On June 2, 2013, after a brief flirtatious association, Plaintiff and CB shared two consensual kisses. On June 30, 2013, CB invited herself to attend a concert in Memphis, Tennessee, that Plaintiff was attending with a platonic female friend over the Fourth of July holiday. CB, Plaintiff, and the female friend agreed to share a hotel room to save expenses. No sort of romantic activity occurred.

Sometime before late August 2013, the Director of Graduate Studies ("DGS"), Dr. Gene Hargrove ("Hargrove"), evaluated CB and recommended her for admission to UNT's graduate program for the fall semester of 2013. Hargrove also hired CB to work for a non-profit housed on campus. Plaintiff played no role in CB's admission to UNT or employment by the non-profit. Plaintiff was never CB's teacher and never exercised any authority over her.

Dr. Patricia Glazebrook ("Glazebrook") was Department Chair of Philosophy and Religion Studies at all times relevant to this lawsuit. At some point when Glazebrook was Chair, UNT took a faculty survey to evaluate whether Glazebrook should be retained as Chair. Plaintiff abstained from the survey and Glazebrook received only one favorable recommendation. Although the survey was supposed to be confidential, it was well known that Glazebrook had only one supporter. Plaintiff was one of the only faculty members who got along reasonably well with Glazebrook during her time as Chair. Glazebrook appointed Plaintiff to DGS in August 2013. Following the survey, Glazebrook was not retained as Chair and left UNT to take a job at another university.

On or about February 7, 2014, CB filed a complaint alleging sexual harassment by Plaintiff. On February 24, 2014, the Department of Equity and Diversity ("OEO") issued a formal complaint on the matter. On March 26, 2014, Glazebrook, as Department Chair, conducted Plaintiff's evaluation for 2011–2013.[1] Among other statements, she noted that Plaintiff ranked second out of thirteen faculty members. In early April 2014, Plaintiff asked Glazebrook why he had not received a letter renewing his teaching appointment for the 2014/2015 academic year. Glazebrook told Plaintiff that she was withholding the letter pending the outcome of a complaint to the OEO. On May 12, 2014, the OEO found that Plaintiff was "not in violation" of UNT's consensual relationship policy and there was "insufficient evidence" to establish a violation of UNT's sexual harassment policy. CB did not appeal the OEO's finding. On July 3, 2014, Plaintiff received a letter from Glazebrook notifying him of UNT's decision not to renew his contract.

---

[1] The First Amended Complaint states first that Plaintiff was ranked second in teaching in the entire department on his 2010–2012 evaluation (Dkt. #36 at ¶ 25). Later, it says that Plaintiff was ranked second out of thirteen faculty in the Department in his 2011–2013 evaluation (Dkt. #36 at ¶ 26). It is not clear if either range is a typographical error. Nevertheless, Plaintiff received good reviews in at least the year leading up to his termination.

Plaintiff appealed his discharge to the College of Arts and Sciences Grievance Committee ("CASGC"). The CASGC is the fact-finding body of UNT's grievance process. CASGC allows a defendant to have representation, introduce and object to evidence, and examine witnesses. Plaintiff availed himself of these procedures and the CASGC found (1) that Glazebrook violated the Philosophy Department By-Laws; (2) that she had been uncooperative and untruthful during the investigation; (3) that due process and equal protection standards were clearly violated; and (4) that there was no factual basis for firing Plaintiff. The report dated July 25, 2014, unanimously recommended that the Dean reverse Glazebrook's decision.

Central to the CASGC findings were comparisons to a 2011 non-renewal of another non-tenured lecturer where Glazebrook did follow the Department By-Laws and procedures. Specifically, in the 2011 termination, Glazebrook consulted with the Department Personal Affairs Committee as well as the Department Executive Committee. She did neither in Plaintiff's case.

According to procedure, the CASGC report was forwarded to the Dean of Arts and Sciences, Dr. Arthur Goven ("Goven"). During this stage, the Dean is supposed to review the record created by the CASGC and either follow the recommendation or reject it. The Dean is not to make any additional fact findings. In this case, Goven did not follow this procedure when he received communications from Glazebrook. Glazebrook falsely represented to Goven that Plaintiff was in the position of DGS in the spring of 2013 and that Plaintiff was DGS with authority over CB when the relationship with CB occurred. After learning that Glazebrook gave additional information to Goven, Plaintiff approached Goven and pleaded for an opportunity to produce evidence to refute Glazebrook's timeline of events. Goven refused, telling Plaintiff that

he agreed with Glazebrook's finding that Plaintiff had used "poor judgment." Neither Goven nor Glazebrook ever specified what "poor judgment" meant.

Plaintiff appealed to the Provost and Vice President for Academic Affairs, Dr. Warren Burggren ("Burggren"). Burggren refused to rule. Instead, Burggren referred the matter to the Ad Hoc UNT Faculty Grievance Committee ("Ad Hoc Committee"). The Ad Hoc Committee was created by the Executive Committee of the Faculty Senate during the 2014/2015 academic year. When Burggren referred the matter, the Ad Hoc Committee had not yet formulated its own by-laws and purported to act under the by-laws of two separate existing committees. The Ad Hoc Committee found that Plaintiff's due process rights had been violated and that Plaintiff had been fired for cause over the CB matter. The Ad Hoc Committee did not opine on whether the cause was a proper cause. Further, it did not make a recommendation whether Plaintiff should be fired or reinstated.

By the time the Ad Hoc Committee finished its inquiry, Burggren left the Provost's office and was replaced by Dr. Finley Graves ("Graves"). After the Ad Hoc Committee refused to give a recommendation, Graves upheld the firing without disclosing his reasoning. Graves presently serves as Interim Provost.

On August 10, 2015, Plaintiff filed his original complaint asserting claims against UNT, Neal Smatresk ("Smatresk"), Finley Graves, Warren Burggren, Arthur Goven, and Patricia Glazebrook (collectively "Defendants") (Dkt. #1). On April 15, 2016, Plaintiff filed his First Amended Original Complaint asserting claims for violations of due process, equal protection, and retaliation under 42 U.S.C. § 1983, Title IX retaliation, breach of contract, and tortious interference with contract (Dkt. #36).

On May 26, 2016, Defendants filed their Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #42). On June 9, 2016, Plaintiff filed a response (Dkt. #43). On June 24, 2016, Defendant filed a reply (Dkt. #46). On September 12, 2016, Plaintiff filed a supplemental brief in response to the Title IX claim (Dkt. #63). On September 23, 2016, Defendants filed a response to Plaintiff's supplemental brief (Dkt. #75).

## LEGAL STANDARD

### 12(b)(1) Motion to Dismiss

Defendants move for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction over those cases arising under federal law. U.S. Const. Art. III, § 2, cl. 1; 28 U.S.C. § 1331. A case arises under federal law if the complaint establishes that federal law creates the cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Empire Healthchoice Assur. Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).

A Federal Rule of Civil Procedure 12(b)(1) motion should be granted only if it appears beyond a doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (Stating that the Court reviews a Federal Rule of Civil Procedure 12(b)(1) motion just as it would a 12(b)(6) motion). However, the Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane*, 529 F.3d at 557 (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "A case is properly dismissed for lack of subject matter jurisdiction when the [C]ourt lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) motion before addressing other motions to dismiss. *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). The Court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

<u>12(b)(6) Motion to Dismiss</u>

Defendants also move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The court may consider "the

complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Plaintiff alleges claims for violations of due process, equal protection, and retaliation under 42 U.S.C. § 1983, Title IX retaliation, breach of contract, and tortious interference (Dkt. #36). In Plaintiff's claims against Smatresk, Graves, Burggren, Goven, and Glazebrook ("the Individual Defendants") Plaintiff asserts causes of action against each person in their individual capacities acting under color of state law. The Court will analyze each cause in turn.

### Subject Matter Jurisdiction

Defendants' argument that the Court does not have subject matter jurisdiction fails. Plaintiff has pleaded a claim under 42 U.S.C. § 1983 and Title IX, which grants the Court subject matter jurisdiction. Plaintiff asserts claims under federal statutes, which gives the Court subject matter jurisdiction. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### Claims against UNT

#### 42 U.S.C. § 1983 Claims

Plaintiff admits that UNT is entitled to sovereign immunity for § 1983 claims (Dkt. #36 at ¶ 12). Therefore, to the extent Plaintiff's complaint appears to allege any claims against UNT under § 1983, those claims are dismissed.

#### Title IX Retaliation

Plaintiff alleges retaliation by a federally funded institution because of his participation in the sexual harassment investigation against him (Dkt. #36 at ¶ 130). Defendant argues that Plaintiff is not entitled to protection because he was the person being investigated and Title IX does not protect that kind of person (Dkt. #42 at p.16). In response, Plaintiff argues that the phrase "in any manner" found in 34 C.F.R. § 100.7(e) allows the subject of a sexual harassment

claim to be protected from discrimination as well as a person who is not under investigation (Dkt. #43 at p.14).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be . . . subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. With regard to sexual harassment investigations, "no recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual . . . because he has . . . testified, assisted, or participated *in any manner* in an investigation, proceeding, or hearing under this part." 34 C.F.R. § 100.7(e) (emphasis added).[2] The term "discrimination" is a term that covers a "wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). A broad reading of the above regulation protects the subject of a sexual harassment claim. Anything less would place too great a weight on false accusations by stripping the subject of the investigation of all protections from the very institution that is supposed to be an impartial tribunal.

Here, CB filed a sexual harassment complaint against Plaintiff. Plaintiff participated and provided evidence in the investigation of CB's sexual harassment claim against him. The OEO exonerated Plaintiff for claims that he violated the Sexual Harassment Policy and the Consensual Conduct Policy. CB did not appeal, therefore making the OEO's decision final. Nevertheless, Glazebrook fired Plaintiff for "poor judgment." Glazebrook has never said what "poor judgment" refers to. After Plaintiff appealed Glazebrook's decision to fire him, the CASGC found that Glazebrook violated University standards. The CASGC's findings were forwarded to Goven who then took *ex parte* evidence from Glazebrook and ultimately upheld Glazebrook's

---

[2] This regulation is part of Title VI's investigation procedure. Title IX incorporates Title VI procedural regulations into its own procedural regulations. 34 C.F.R. § 106.71. Therefore, this provision is applicable to Plaintiff's Title IX claim.

decision. Later, Burggren referred the matter to the Ad Hoc Committee. The Ad Hoc Committee incorrectly stated that CB was a UNT employee at the time of the alleged sexual misconduct. The Ad Hoc Committee further stated that allegations of sexual harassment were a serious problem in the Department of Philosophy. The Ad Hoc Committee did not allow Plaintiff to hear or refute any of these allegations. Using these facts, the Ad Hoc Committee found that Plaintiff used poor professional judgment and that Plaintiff was fired for cause. At the same time, the Ad Hoc Committee found that Plaintiff's due process rights were violated at the Department level. The Ad Hoc Committee also agreed with the CASGC that Glazebrook violated University standards.

The Court finds that Plaintiff has alleged sufficient facts to support a claim that he was retaliated against by UNT because he was the subject of a sexual harassment investigation and because he provided testimony and evidence in his favor. Defendants' motion on this ground is denied.

<u>Breach of Contract</u>

Contract claims are barred by sovereign immunity as a matter of law unless the legislature grants a waiver of immunity. *Tex. Nat. Res. Cons. Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002); TEX. GOV'T CODE ANN. § 2260.006. Plaintiff has not alleged any waiver. Therefore, Plaintiff has failed to state a claim for relief for breach of contract against UNT.

**Claims Against Individual Defendants**

Plaintiff alleges claims against the Individual Defendants under § 1983, for breach of contract, and for tortious interference with contract. Plaintiff's § 1983 claims arise from violations of due process for deprivations of property and liberty interests, of equal protection, and of first amendment associational rights. Plaintiff alleges each allegation against all of the

Individual Defendants. Defendants have raised the defenses of qualified and official immunity for all claims against the Individual Defendants.

Claims Against Neal Smatresk and Finley Graves

Neal Smatresk has only been included in the allegations by being named as a party. Finley Graves has only been included in the events by serving as Interim Provost (Dkt. #36 at ¶ 98) and the person who "upheld the firing" (Dkt. #36 at ¶ 109). The Court finds that the allegations against both of these defendants are insufficient to support a claim and all claims against them individually are dismissed for failure to state a claim.

Freedom of Association

Plaintiff alleges that he was retaliated against and denied due process as a result of exercising his right to freely associate with other persons (Dkt. #36 at ¶¶ 100, 126). "The [Supreme] Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984). These relationships are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. *Id.* at 620. These types of associations that have been protected are typically couched in terms of family, such as marriage, childbirth, raising and educating children, and cohabitation with one's relatives. *Walker v. Henderson*, 239 F.3d 366, 2000 WL 1741736, at *2 (5th Cir. 2000). Plaintiff was fired for a brief consensual relationship. Based on Plaintiff's allegations, the Court finds Plaintiff has alleged sufficient facts to support a claim against Burggren, Goven, and Glazebrook for infringement of his freedom of association.

<u>Due Process—Property Right in Employment</u>

Plaintiff alleges a property interest in continued employment "by virtue of his written contract, which incorporates the provisions of the UNT Policy & Procedure Manual and the UNT Faculty Handbook, and of the customs of the UNT academic process" (Dkt. #36 at ¶ 110). Defendants argue that Plaintiff's property claim must fail because Plaintiff's contract was a non-tenured, five-year contract with annual renewals, which is distinguishable from a tenured professor (Dkt. #42 at p.6).

In order to have a property interest in continued employment, a person "must have more than an abstract need or desire for it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "He must instead have a legitimate claim of entitlement to continued employment." *Id.* Courts must look to state law to determine the sufficiency of a claim of entitlement. *Id.*

"In Texas, there exists a presumption that employment is at-will, unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted). When the term of service is left to the discretion of either employer or employee, either of those parties may terminate the employment relationship at-will and without cause. *McClendon v. Ingersoll-Rand Co.*, 779 S.W.2d 69, 70 (Tex. 1989); *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888). Employee handbooks, standing alone, "constitute no more than general guidelines" absent express reciprocal agreements addressing discharge protocols. *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992) (citations omitted).

Plaintiff claims that the reasoning of *Perry v. Sindermann,* 408 U.S. 593 (1972), gives him a legitimate claim to continued employment (Dkt. #43 at p.6). In *Sindermann*, the plaintiff was a professor at Odessa Junior College ("OJC"). *Id.* at 599. OJC did not have a formal tenure

system. *Id.* The plaintiff argued that he had de facto tenure under an understanding fostered by

OJC administration and stated in the Faculty Guide. *Id.* at 600. The Faculty Guide stated in

relevant part:

> Teacher Tenure: Odessa College has no tenure system. The Administration of the
> College wishes the faculty member to feel that he has permanent tenure as long as
> his teaching services are satisfactory and as long as he displays a cooperative
> attitude toward his co-workers and his superiors, and as long as he is happy in his
> work.

*Id.* The Supreme Court held that the plaintiff had a property interest in continued employment

because there was a set of "rules and understandings, promulgated and fostered by state

officials" that justified a legitimate claim of entitlement to continued employment. *Id.* at 602.

Here, Plaintiff has alleged that it is the long-standing custom and practice at UNT that

non-tenured teachers who have multi-year appointments can rely on continued employment until

the expiration of the full term of their contract as long as their job performance meets or exceeds

expectations. Plaintiff has further alleged that he received favorable evaluations up until his

termination. In Plaintiff's final evaluation, Glazebrook ranked him as the second best faculty

member in teaching. The final evaluation further noted the several honors given to Plaintiff by

the Department in 2013. Finally, Plaintiff alleged that the OEO exonerated him of any violation

of UNT's Sexual Harassment Policy or the Consensual Conduct Policy. Assuming these facts are

true, Plaintiff has alleged sufficient facts to support a claim against Burggren, Goven, and

Glazebrook for deprivation of his property interest in continued employment in light of the

policies and practices of UNT.

<u>Due Process—Liberty Interest in Employment</u>

Plaintiff alleges that "his academic and personal reputations have been severely damaged

by the conduct of Glazebrook and the other Defendants" (Dkt. #36 at ¶ 112). In Plaintiff's

response to Defendants' Motion to Dismiss, Plaintiff clarifies that he is alleging a violation of his liberty interest in employment (Dkt. #43 at p.7).

To establish a liberty interest, an employee must demonstrate that his governmental employer has brought false charges against him that "might seriously damage his standing and associations in his community," or that impose a "stigma or other disability" that forecloses "freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573. Neither damage to reputation alone nor the stigma resulting from the discharge itself triggers the protections of due process. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006). Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises only when the employee is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000). The remedy for such a deprivation of liberty is a name-clearing hearing before the governing body. *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 n.18 (5th Cir. 1984). When a person is denied the opportunity to clear his name, that person may recover monetary damages under § 1983 for the deprivation of his liberty interest under the Fourteenth Amendment. *Rosenstein v. City of Dall.*, 876 F.2d 392, 395 (5th Cir. 1989).

The Fifth Circuit employs a seven-element "stigma-plus-infringement" test to determine whether a plaintiff has a § 1983 claim for deprivation of liberty without notice or opportunity to clear his name. *Bledsoe*, 449 F.3d at 653 (citing *Hughes*, 204 F.3d at 226). A plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be

heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

Here, Defendants specifically attack the fifth element—that the charges were made public (Dkt. #42 at p.5 n.2). Plaintiff has adequately pleaded facts supporting the rest of the elements by stating that he had a complaint filed against him that the OEO heard and exonerated him from, but Glazebrook and the rest of the administration nevertheless fired him for using "poor judgment." Plaintiff does not allege any facts in his complaint that his abstention was made public. However, Plaintiff alleges in his Response to Defendants' Motion to Dismiss that "[t]he very act of firing for cause confirmed in the minds of many that he was guilty, regardless of the OEO findings, and this was exacerbated by the actions of the Individual Defendants in making statements that they agreed with Glazebrook's firing of Plaintiff" (Dkt. #43 at p.7). Therefore the Court will allow Plaintiff to amend his complaint to allege the missing element of his liberty interest claim.

Due Process—First Amendment Retaliation

Plaintiff alleges an act of retaliation under § 1983 for exercising his first amendment right to abstain from a faculty survey (Dkt. #36 at ¶ 125).

To state a valid First Amendment retaliation claim, Plaintiff must show that: (1) Plaintiff was not speaking pursuant to his official job duties; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs his employer's interest in promoting efficiency; (4) the plaintiff suffered an adverse employment action; and (5) his speech motivated the adverse employment decision. *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 827 (5th Cir. 2007). If speech was made pursuant to official duties as an employee of the University, that "speech is not constitutionally protected, no matter how great its

social significance." *See Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751 (N.D. Tex. July 10, 2015). Speech is made pursuant to official duties if it is undertaken in the course of performing one's job. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). Factors relevant to this inquiry include the employee's job description, whether the employee spoke on the subject matter of his employment, whether the speech stemmed from special knowledge gained as an employee, and whether the communication was internal or external in nature. *See Charles v. Grief,* 522 F.3d 508, 513–14 (5th Cir. 2008).

Here, Plaintiff argues that he was subjected to retaliation "in particular for his abstention when the Department was surveyed to determine whether [Glazebrook] should be retained as Chair" (Dkt. #36 at ¶ 125). Even assuming these allegations are true, Plaintiff is unable to establish that his abstention was not made pursuant to his official duties or spoke to a matter of public concern. A survey evaluating whether Glazebrook should be retained as chair clearly stems from special knowledge gained as an employee and was internal in nature. Further, criticizing or evaluating a supervisor's performance is not a matter of public concern. *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005). Therefore, Plaintiff has failed to state a claim for protected First Amendment speech.

<u>Equal Protection</u>

Plaintiff alleges that his right to equal protection was violated when UNT applied different standards and conditions in making the decision to fire him than it applied to previously terminated non-tenured professors (Dkt. #36 at ¶ 118). Defendants argue that a "class of one" theory of equal protection does not apply in the public employment context (Dkt. #42 at p.11). Plaintiff relies on *Village of Westbrook v. Olech,* 528 U.S. 562, 564 (2000), to establish that a "class of one" theory does apply (Dkt. #43 at p.9).

In *Olech*, the Supreme Court held that an equal protection claim may be brought by a "class of one" alleging unfair application of a city ordinance. *Id.* The Supreme Court defined a "class of one" claim as one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Eight years later, the Supreme Court clarified that a "class of one" claim is not viable in the context of public employment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 597 (2008). In so deciding, the Supreme Court stated that while statutes and regulations must provide a rational basis for any arbitrary lines drawn, seemingly arbitrary decisions are at the very heart of the employment realm. *Id.* at 604–05. The Supreme Court clarified by holding:

> [T]he Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently . . . But we have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner.

*Id.* at 605. Therefore, in order for a plaintiff to allege a cause of action for violation of Equal Protection, the plaintiff must allege that his membership in a particular class was the reason for disparate treatment. Here, Plaintiff's allegations that he was treated differently based on an arbitrary and irrational decision, but not because of his membership in a particular class of persons, fail to state a claim. Therefore, Plaintiff's claim for Equal Protection is dismissed.

Title IX

Plaintiff alleges a cause of action for retaliation in violation of Title IX that is actionable under 42 U.S.C. § 1983. As stated previously, Plaintiff has adequately alleged a claim against UNT for retaliation. However, the question for the Court is whether a plaintiff may bring a § 1983 claim against individual defendants based on violations of Title IX.

Plaintiff argues that he may assert a § 1983 claim against an individual based on violation of Title IX under *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) (Dkt. #43 at p.16). The Court disagrees.

In *Fitzgerald*, the plaintiff sued both the school committee and its superintendent. 555 U.S. at 250. Just like this case, the plaintiff alleged § 1983 claims for violations of both Title IX and the Equal Protection Clause of the Fourteenth Amendment. *Id.* The district court dismissed both § 1983 claims. *Id.* The court of appeals affirmed, holding that Title IX's implied remedy was "sufficiently comprehensive" to preclude use of § 1983 based on Title IX itself as well as § 1983 claims based on the Equal Protection Clause. *Id.* at 251. The Supreme Court granted certiorari to address whether Title IX precludes use of § 1983 to redress unconstitutional gender discrimination in schools. *Id.* After a careful analysis of the purpose and scope of the two statutes, the Supreme Court held that Title IX did not preclude use of § 1983 to redress unconstitutional gender discrimination in schools. *Id.* at 258.

The issue that the Supreme Court resolved in *Fitzgerald* is different than the argument Plaintiff makes here. The Supreme Court's holding did not deal with the specific issue of whether a plaintiff could base his § 1983 claim on a violation of Title IX. Rather, the Supreme Court analyzed whether Congress's enactment of Title IX inferred that § 1983 claims based on violations of the Equal Protection Clause were wiped out by Title IX. In determining whether such intent could be inferred, the Supreme Court compared the rights and protections of each statute and those existing under the Constitution. *Id.* at 252. In previous cases where the Supreme Court found § 1983 to be precluded, the Supreme Court recognized that those statutes were so comprehensive and detailed that there was little left for § 1983 to protect. *Id.* at 253–54 (citing *Smith v. Robinson*, 468 U.S. 992, 1011 (1984)). In those cases the Supreme Court found that

§ 1983 was precluded because it would otherwise allow a plaintiff to "circumvent the statutes' provisions in [a] way [that] would have been 'inconsistent with Congress's carefully tailored scheme.'" *Id.* at 255 (citing *Smith*, 468 U.S. at 1012). Finally, while the Supreme Court recognized the varying schemes available under Title IX and § 1983, it ultimately held that "parallel or concurrent § 1983 claims" would not allow access to new remedies. *Id.* at 256.

Based on the Supreme Court's finding in *Fitzgerald*, the Court finds that Plaintiff cannot state a claim under § 1983 based on an underlying violation of Title IX. *See Cox v. Sugg*, 484 F.3d 1062, 1067 (8th Cir. 2007); *Williams v. Bd. of Regents of Univ. Sys of Ga.*, 477 F.3d 1282 (11th Cir. 2007); *Seamons v. Snow*, 84 F.3d 1226, 1234 n.8 (10th Cir. 1996). Title IX does not allow suit against individuals. *Fitzgerald*, 555 U.S. at 257. Plaintiff seeks to avoid this restriction by nesting a Title IX claim into a § 1983 claim and claiming that Title IX is the substantive right violated. This is in conflict with *Fitzgerald* by giving Plaintiff rights that would be unavailable under Title IX. *See id.* at 256. Therefore, the Court finds that Plaintiff cannot state a claim for relief under § 1983 based on an underlying violation of Title IX.

## Breach of Contract

Plaintiff has failed to state a claim for breach of contract with regard to the Individual Defendants. Plaintiff only alleges a contract with UNT, but not the Individual Defendants. Therefore, Plaintiff's claim for breach of contract is dismissed for failure to state a claim. *Bisong v. Univ. of Hous.*, No. H-06-1815, 2006 WL 2414410, at *3 (S.D. Tex. 2006).

## Tortious Interference

Plaintiff alleges that the Individual Defendants tortiously interfered with his contract with UNT (Dkt. #36 at ¶ 139–42). To assert a tortious interference claim, a plaintiff must prove that (1) a contract subject to interference exists, (2) the act of interference was willful and intentional,

(3) such intentional act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A contracting party's agent or employee acting in the party's interest cannot interfere with the party's contract. *Holloway v. Skinner*, 898 S.W.2d 793, 798 (Tex. 1995). "To establish a prima facie case [of tortious interference by an agent with the principal's contract], the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." *Id.* at 796.

Plaintiff has alleged sufficient facts to state a plausible claim against Burggren, Goven, and Glazebrook for tortious interference. Therefore, Defendants' motion to dismiss on this ground is denied.

**Qualified and Official Immunity**

Defendants assert qualified and official immunity with regard to all of Plaintiff's claims against the Individual Defendants. Qualified immunity applies to Plaintiff's federal law claims while official immunity applies to Plaintiff's state law claims. The Court will analyze immunity only on the claims that have not already been disposed of on other grounds.

In order to establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary

authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically engaged in a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). If a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Creighton,* 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The Supreme Court recently instructed courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

<u>Freedom of Association</u>

Plaintiff asserts a liberty interest to freely associate with CB (Dkt. #36 at p.22). Plaintiff has failed to allege that his liberty interest, if any, to associate with CB was clearly established. Plaintiff argues that his right to associate with a female is well established because family is the most basic form of an "intimate association" and in order to create a family or to marry, dating must come first (Dkt. #43 at p.8). Plaintiff bases his arguments on the Supreme Court's holdings in *Loving v. Virginia* and *Obergefell v. Hodges* which held that a person has a fundamental right to marry any race or gender they prefer (Dkt. #43 at p.8). Plaintiff argues that because dating is a precursor to marriage, he must have the right to date any person he chooses.

The Supreme Court has identified several intimate relationships that constitute fundamental rights, including those that "attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984) (internal citations omitted). Beyond these fundamental rights, the Court explained that human relationships are arrayed on a spectrum "from the most intimate to the most attenuated of personal attachments." *Id.* at 620. However, the Supreme Court has held that these rights may be curtailed by appropriate regulations. *Turner v. Safley*, 482 U.S. 78, 95 (1987) (limiting the privilege of prison inmates to marry). Further, the Supreme Court has clarified that the right to intimate association should not be interpreted to apply only to familial relationships. *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545–46 (1987). Rather, the Court must conduct "a careful assessment of where [the] relationship's objective characteristics locate it on [the] spectrum." *Roberts*, 468 U.S. at 620.

In the context of consensual relationships that fall short of marriage, the Supreme Court has provided little guidance. On one extreme, the Supreme Court upheld a regulation prohibiting

rental of motel rooms for less than 10 hours because "any 'personal bonds' that are formed from the use of a motel room for fewer than 10 hours are not those that have 'played a critical role in the culture and traditions of the Nation.'" *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 237 (1990). However, the Supreme Court has not addressed whether a consensual relationship, short of marriage, between two adults is constitutionally protected. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 58 (2d Cir. 2014).

Even in the context of serious relationships amounting to engagements, the circuits are split. In *Matusick*, the Second Circuit found that an engagement between two adults of different races was entitled to similar protections as marriages. *Id.* However, in *Cameron v. Seitz*, the Sixth Circuit held that an engagement was not a clearly established right that could overcome qualified immunity. 38 F.3d 264, 275–76 (6th Cir. 1984). Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established. *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (citing *Wilson v. Layne*, 526 U.S. 603, 617–18 (1999)). Further, where the relationship is less defined, there cannot be any clearly established right because the court cannot engage in any "careful assessment" required by *Roberts*. *Walker v. Henderson*, No. 00-60014, 2000 WL 1741736, at *5 (5th Cir. Nov. 16, 2000); *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 95–96 (1st Cir. 2009).

Here, the relationship with CB falls well short of an engagement. Plaintiff has not cited to any controlling Supreme Court or Fifth Circuit case law dealing with the relationship in this suit. The Court concludes that in the absence of any controlling case law dealing with this particular type of relationship, and when there is a circuit split regarding more serious relationships than the relationship here, any right Plaintiff may have in his intimate association is not clearly

established. Further, based on the facts alleged in the complaint, the Court cannot engage in any "careful assessment" required by *Roberts*. Therefore, Plaintiff has failed to overcome the Individual Defendants' entitlement to qualified immunity regarding Plaintiff's claim for deprivation of his right to association.[3]

## Property Interest

Plaintiff has alleged sufficient facts to establish the Individual Defendants violated his clearly established right to continued employment. The Supreme Court in *Sindermann* held that a professor may have a claim of entitlement to continued employment when the school's policies and practices create an expectation of continued employment. 408 U.S. at 603. In order to violate clearly established law, the action does not have to have been previously held unlawful, but must be apparent in light of pre-existing law. *Wilson*, 526 U.S. at 615 (citing *Anderson*, 483 U.S. at 640). The Court finds that Plaintiff's right to renewal was apparent in light of law at the time of his termination.

Defendants argue that the mere existence of a tenure process means that Plaintiff was not assured of continuing employment because he was clearly non-tenured (Dkt. #42 at p.6). Alternatively, Defendants argue that even if there is a property right, it was not clearly established (Dkt. #42 at p.22). Of the many cases cited by Defendants, only one deals with a non-tenured Texas professor. That case, *Spuler v. Pickar*, is distinguishable because in *Spuler*, the plaintiff alleged a deprivation of his interest in employment because he was denied tenure. 958 F.2d 103, 106 (5th Cir. 1992).

---

[3] Plaintiff argues in his response to the motion to dismiss that UNT only had the power to make reasonable restrictions of the right to intimate association and that it did so in its enactment of sexual harassment and consensual conduct policies. Further, Plaintiff argues that his exoneration by the OEO entitled him to protection because he was found to have complied with the rational limitations put in place by UNT (Dkt. # 43 at p.9). While these arguments go to whether Plaintiff had a constitutional right that was violated, they do not change the analysis as to whether that right, if any, was clearly established.

In *Spuler*, the plaintiff's contract was expired and he was terminated for financial reasons. *Id.* at 104–05. When the plaintiff asked to be considered for tenure, the school obliged, but ultimately did not grant tenure. *Id.* at 105. It was from this decision that he claimed he was denied his right to tenure. *Id.* at 106. The plaintiff claimed that according to the faculty handbook, he was entitled to tenure merely after serving the requisite number of years. *Id.* at 107. The Fifth Circuit ultimately held that the clearly written tenure provisions of the university were not supplanted by the faculty handbook. *Id.*

Here, Plaintiff claims a longstanding custom and practice that non-tenured teachers with multi-year appointments may rely on renewal until the end of their contract. He does not claim, as the plaintiff in *Spuler* did, that he should have been granted tenure or that he should have been given a new term contract. Rather, his claim is based on an interest that, "though not secured by a formal contractual tenure provision, was fostered by a no less binding understanding fostered by the college administration." *Sindermann*, 408 U.S. at 599. This right was apparent to school officials because it is the law from the Supreme Court. Therefore, Burggren, Goven, and Glazebrook are not entitled to qualified immunity with regard to Plaintiff's property interest in employment claim.

Tortious Interference

Under Texas law, "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1097 (5th Cir. 1997) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). Official immunity is an affirmative defense. *Chambers*, 883 S.W.2d at 653. Thus, the burden is on the defendants to establish all elements of the defense. *Id.* In order to rebut a defendant's

claim of good faith, the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Tamez*, 118 F.3d at 1097 (citing *Chambers*, 883 S.W.2d at 657). The issue of official immunity in Texas is somewhat less likely to be resolved before trial than is the federal test for qualified immunity. *Chambers*, 883 S.W.2d at 657.

Plaintiff has adequately alleged that the Burggren, Goven, and Glazebrook were acting ultra vires and willfully and intentionally interfered with Plaintiff's contract with UNT. Defendants have simply stated that "a reasonable official in the Individual Defendants' position could believe she did not tortuously interfere with an [*sic*] contract when she was merely acting as in her position as supervisor or manager for the employer, where the contract, by its very terms, permitted non-renewal of Plaintiff's appointment" (Dkt. #42 at p.24). Based on facts before the Court, factual issues remain about whether the Individual Defendants were acting within the scope of their authority or whether they acted with good faith under the circumstances. Therefore, it is inappropriate to find immunity in the Individual Defendants' favor at this stage in the litigation. Thus, Burggren, Goven, and Glazebrook are not entitled to official immunity on the tortious interference claim.

**Leave to Amend**

The Court grants Plaintiff leave to amend his complaint to remove all claims and defendants that have been dismissed. The Court further grants leave for Plaintiff to allege additional facts for the publication element of his liberty interest in employment claim.

**CONCLUSION**

It is therefore **ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Original Complaint (Dkt. #42) is **GRANTED** in part and Defendants Neal Smatresk and Finley Graves are **DISMISSED** from this lawsuit.

It is further **ORDERED** that Plaintiff's claims against the University of North Texas for § 1983 and breach of contract are **DISMISSED**.

It is further **ORDERED** that Plaintiff's claims against Warren Burggren, Arthur Goven, and Patricia Glazebrook for freedom of association, first amendment retaliation, equal protection, § 1983 based on Title XI, and breach of contract are **DISMISSED**.

Defendants' motion is **DENIED** in all other respects.

 **SIGNED this 30th day of November, 2016.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE