# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DALE A. WILKERSON §<br>§<br>v. §<br>§<br>UNIVERSITY OF NORTH TEXAS, BY §<br>AND THROUGH ITS BOARD OF §<br>REGENTS; NEAL SMATRESK, §<br>PRESIDENT; FINLEY GRAVES, INTERIM §<br>PROVOST AND VICE PRESIDENT FOR §<br>ACADEMIC AFFAIRS; WARREN §<br>BURGGREN, FORMER PROVOST AND §<br>VICE PRESIDENT FOR ACADEMIC §<br>AFFAIRS; ARTHUR J. GOVEN, FORMER §<br>DEAN, COLLEGE OF ARTS & §<br>SCIENCES; AND PATRICIA §<br>GLAZEBROOK, FORMER CHAIR, §<br>DEPARTMENT OF PHILOSOPHY AND §<br>RELIGION STUDIES § | Civil Action No. 4:15-CV-00540<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. #48). After reviewing the relevant pleadings and motion, the Court finds the motion should be denied in part.[1]

### BACKGROUND

This case arises from the non-renewal of an employment contract for a non-tenured professor. Plaintiff, Dale Wilkerson, was originally hired by the University of North Texas ("UNT") in 2003 as a Lecturer in the Department of Religion and Philosophy ("the Department") in the College of Arts and Sciences. In 2008, Plaintiff was reappointed and promoted to Principal Lecturer. Plaintiff held that position until his termination in June 2014. Principal Lecturer is the

---
[1] All Defendants moved for summary judgment as to each of Plaintiff's claims. However, for the purpose of this order, the Court will only analyze Defendants' motion as it relates to the Title IX claim against the University of North Texas. The rest of the claims will be addressed in an order to follow at a later date.

highest level attainable at UNT for any teacher who is not tenured or on a tenure track appointment. The only known causes for discharge of teachers with long years of service were because of elimination or reduction of a particular program, a general reduction in force, or the commission of a serious violation of UNT's policies and procedures.

Plaintiff's complaint centers around an allegedly wrongful discharge by UNT that was based at least in part on a relationship that UNT deemed to be inappropriate.

On March 1, Plaintiff met a 26-year-old-femal, CB, at a graduate student recruitment weekend at the house of the Director of Graduate Studies ("DGS") Dr. Gene Hargrove ("Hargrove"). CB had applied to UNT in the Fall 2011 semester, and was admitted for the Fall 2012 semester, but deferred her enrollment until the Fall 2013 semester. On May 31, 2013, Plaintiff was approached at a local bar by CB who was in town for job training. On June 2, 2013, CB went to Plaintiff's house. According to CB's complaint with the Office of Equal Opportunity ("OEO"), Plaintiff held CB down, kissed her, and asked her to undress while at Plaintiff's house. Plaintiff kissed CB again when he dropped her off at her house. Plaintiff admits to kissing CB, but denies holding her down, asking her to undress, or that either kiss was not consensual. CB did not recall who initiated either kiss but claimed that they were not consensual.

On June 30, 2013, CB invited herself to attend a concert in Memphis, Tennessee, that Plaintiff was attending with a platonic female friend over the Fourth of July holiday. CB, Plaintiff, and the female friend agreed to share a hotel room to save expenses. No sort of romantic activity occurred. It is not until this time that Plaintiff claims to have learned of CB's enrollment at UNT. Until this point in time, CB was not taking and had not taken any courses by Plaintiff. Plaintiff was appointed to DGS in September 2013 by Dr. Patricia Glazebrook ("Glazebrook"), the Department Chair of Philosophy and Religion Studies.

On February 7, 2014, CB filed a complaint alleging sexual harassment by Plaintiff during the June 2, 2013 encounter. On February 24, 2014, the OEO issued a formal complaint.

On March 26, 2014, Glazebrook conducted Plaintiff's evaluation for 2011–2013. Among other statements, she noted that Plaintiff ranked second out of thirteen faculty members for teaching. In early April 2014, Plaintiff asked Glazebrook why he had not received a letter renewing his teaching appointment for the 2014–2015 academic year. Glazebrook told Plaintiff that she was withholding the letter pending the outcome of a complaint to the OEO.

In a report dated May 12, 2014, the OEO found (1) at the time of the incident, Plaintiff did not have authority over CB and therefore could not be in violation of the consensual relationship policy; and (2) there was insufficient evidence to establish a violation of UNT's sexual harassment policy. CB did not appeal the OEO's finding.

On July 3, 2014, Plaintiff received a letter from Glazebrook notifying him of UNT's decision not to renew his contract.

Plaintiff appealed his discharge to the College of Arts and Sciences Grievance Committee ("CASGC"). The CASGC found (1) that Glazebrook violated the Philosophy Department By-Laws; (2) that she had been uncooperative and untruthful during the investigation; (3) that due process and equal protection standards were clearly violated; and (4) that there was no factual basis for firing Plaintiff. The report dated July 25, 2014, unanimously recommended that the Dean reverse Glazebrook's decision.

The CASGC report was forwarded to the Dean of Arts and Sciences, Dr. Arthur Goven ("Goven"). Goven found that Plaintiff acted with "poor professional judgment" based on statements by Glazebrook that Plaintiff had accepted the job as DGS before June 2, 2013 and knew or should have known that CB would be under his influence in the fall semester.

3

Plaintiff appealed to the Provost and Vice President for Academic Affairs, Dr. Warren Burggren ("Burggren"). Burggren charged a subcommittee of the CASGC (the "Subcommittee"). In a report dated January 26, 2015, The Subcommittee found that Plaintiff's due process rights had been violated because Glazebrook failed to consult with the Department Personnel Affairs Committee. However, the Subcommittee ultimately found that Plaintiff "did indeed exercise poor professional judgment" (Dkt. #48, Exhibit 5 at p.5). The Subcommittee stated that the "charge of poor judgment would remain whether or not Wilkerson was DGS because his involvement with the female student was not appropriate given her position as an incoming graduate student and employee in the [Department]" (Dkt. #48, Exhibit 5 at p.5). Further, the Subcommittee recommended that because Plaintiff's incident was one of several cases involving Department faculty members, "[t]hese problems must be addressed in a thorough and systematic fashion" (Dkt. #48, Exhibit 5 at pp.5–6). The Subcommittee did not make a recommendation whether Plaintiff should be fired or reinstated.

On March 17, 2015, the Interim Provost and Vice President for Academic Affairs, Finley Graves, sent Plaintiff a letter upholding the decision to not reappoint Plaintiff. This letter concluded Plaintiff's grievance.

On August 10, 2015, Plaintiff filed his original complaint asserting claims against UNT, Neal Smatresk, Finley Graves, Warren Burggren, Arthur Goven, and Patricia Glazebrook (collectively "Defendants") (Dkt. #1). On April 15, 2016, Plaintiff filed his First Amended Original Complaint asserting claims for violations of due process, equal protection, and retaliation under 42 U.S.C. § 1983, Title IX retaliation, breach of contract, and tortious interference with contract (Dkt. #36).

On August 25, 2016, Defendants filed a motion for summary judgment (Dkt. #48). On September 23, 2016, Plaintiff filed a response (Dkt. #74).

On November 30, 2016, the Court entered an order granting in part Defendants' motion to dismiss (Dkt. #85). Following the Court's order, the only claim remaining against UNT is Plaintiff's Title IX claim.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements

of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but must "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiff alleges retaliation by a federally funded institution because of his participation in the sexual harassment investigation against him (Dkt. #36 at ¶ 130). Defendants argue that the subject of a Title IX investigation is not entitled to protection by that statute (Dkt. #48 at p.24). Further, Defendants argue that there is no causal connection between Plaintiff's involvement in the investigation and his termination, especially given the allegations that Glazebrook ignored the OEO findings (Dkt. #48 at p.24). In response, Plaintiff argues that the phrase "in any manner" found in 34 C.F.R. § 100.7(e) allows the subject of a sexual harassment claim to be

protected from discrimination as well as a person who is not under investigation (Dkt. #74 at p.32). Plaintiff further argues that Glazebrook's complete disregard for due process is evidence of a causal link (Dkt. #74 at p.33).

After reviewing the summary judgment evidence, the Court finds that there are fact issues remaining for Plaintiff's Title IX claim against UNT. Summary judgment is denied as to Plaintiff's Title IX claim against UNT and the cause should proceed to trial.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #48) is hereby **DENIED IN PART**.

**SIGNED this 30th day of November, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE