# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DALE A. WILKERSON | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-00540 |
| | § | Judge Mazzant |
| UNIVERSITY OF NORTH TEXAS, | § | |
| By and Through its Board of Regents | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Dr. Dale A. Wilkerson's Motion for New Trial (Dkt. #169). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Between December 10 and 13, 2018, the parties tried this case to a jury (Dkt. #157; Dkt. #158; Dkt. #159; Dkt. #160). On December 13, 2018, the jury returned a verdict finding that Defendant the University of North Texas, by and through its Board of Regents, would not have renewed Plaintiff's employment but for Plaintiff's act of testifying, assisting, or participating in an investigation, proceeding, or hearing under Title IX (Dkt. #162). Accordingly, on December 20, 2018, the Court entered Judgment on the Jury Verdict ordering that Plaintiff take nothing. The Court then dismissed Plaintiff's case with prejudice. On January 17, 2019, Plaintiff filed his Motion for New Trial (Dkt. #169). Defendant filed a response to the motion on January 31, 2019 (Dkt. #170). Plaintiff did not file a reply to the motion.[1]

---

1. Neither party ordered a transcript of the trial. The parties instead rely on their recollection of the trial. Therefore, the Court rules on Plaintiff's motion without the assistance of the trial record.

**LEGAL STANDARD**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party— is grounds for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

To be entitled to a new trial, Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton Healthcare*, No. A-10-CV-650 AWA, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser–Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). A jury verdict is entitled to great deference. *Dresser–Rand Co.,* 671 F.2d at 839. "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir. 1988).

**ANALYSIS**

Plaintiff moves for a new trial contending (1) the greater weight of the evidence; (2) a discovery abuse; (3) jury confusion; (4) erroneous evidentiary rulings by the Court; and (5)

improper or inflammatory jury arguments made by Defense Counsel all warrant a new trial (Dkt. #169). Defendant opposes each of Plaintiff's arguments (Dkt. #170).

## I. Greater Weight of the Evidence

In two sections, Plaintiff argues that the Court should grant a new trial because the verdict is against the great weight of the evidence (Dkt. #169 at pp. 3–5, 6).[2] Although Plaintiff provides authority to support his argument, Plaintiff does not cite evidence demonstrating that the verdict is against the great weight of the evidence (*See* Dkt. #169 at pp. 3–5). Instead, Plaintiff provides only a factual synopsis of the case (Dkt. #169 at p. 6). None of the facts alleged by Plaintiff show that the verdict—finding that Defendant did not terminate Plaintiff because he participated in a Title IX investigation—demonstrate that the verdict is against the great weight of the evidence. As a result, Plaintiff does not meet his Rule 59(a) burden in these sections. *See Taylor*, 2012 WL 2396880, at *2 (citing *Dresser–Rand Co.,* 361 F.3d at 838–39; *Shows*, 671 F.2d at 930); *Jones v. Ruiz*, 478 F. App'x. 834, 835 (5th Cir. 2012) (quoting *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999)).

## II. Discovery Abuse

Plaintiff next claims that Defendant failed to produce a memorandum from Dr. Kimi King (the "September Memorandum") and other members of the "CAS Ad Hoc Committee" to Provost Warren Burggren (Dkt. #169 at pp. 7–9). "A district court also has discretion to grant a new trial on the basis of newly discovered evidence." *Randle v. Tregre*, CV 15-395, 2016 WL 760770, at *2 (E.D. La. Feb. 26, 2016) (citing *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995)). "In deciding whether newly discovered evidence is sufficient to warrant a new trial, the district court should consider whether the evidence: (1) would probably have changed the outcome of the trial; (2) could have been discovered earlier with due diligence; and (3) is merely cumulative or

---

2. The Court reads Plaintiff's "Weight of the Evidence" and "The Case in a Nutshell" sections together.

impeaching." *Diaz*, 46 F.3d at 495 (citing *Osburn v. Anchor Labs., Inc.*, 825 F.2d 908, 917 (5th Cir. 1987); *Johnston v. Lucas*, 786 F.2d 1254, 1257 (5th Cir. 1986); *La Fever, Inc. v. All-Star Ins. Corp.*, 571 F.2d 1367, 1368 (5th Cir. 1978)). "The burden is on the movant to demonstrate that the new evidence 'clearly weighs in favor of a new trial.'" *Randle*, 2016 WL 760770, at *2 (quoting *Diaz*, 46 F.3d at 495).

Plaintiff argues Defendant's failure to produce the September Memorandum prejudiced Plaintiff's ability to develop his case:

> In great detail this memo lays out what happened as reported by highly educated, competent witnesses contemporaneously with the occurrence of the events. Plaintiff was greatly handicapped by not having this document when taking the depositions of Provost Burggren and Dean Goven. Both Burggren and Goven professed to not remember significant facts about the [Plaintiff's] case, even though it fell to them to decide [Plaintiff's] fate. Therefore what they did, when they did it, what they said and heard were vital to the development of Plaintiff's case. Plaintiff was greatly handicapped in taking these depositions because the memorandum that [Plaintiff] timely requested was not produced by Defendant. Similarly the document was not available at trial to refresh memories and to impeach inaccurate testimony.

(Dkt. #169 at p. 7). Defendant responds that to the extent there is a discovery abuse, the abuse does not merit a new trial because the information contained in the September Memorandum document is simply a "recapitulation of information already contained in the College-level grievance report, packaged to address larger administrative concerns of faculty members [(the "July Report")]." (Dkt. #170 at p. 7). The Court begins with the cumulative or impeaching factor identified in *Diaz* before addressing the other two factors.

### A. Cumulative or Impeaching

When newly-discovered evidence is merely cumulative or impeaching, it is less likely to warrant a new trial. *See Diaz*, 46 F.3d at p. 495. Plaintiff explains that had he possessed the

4

September Memorandum during the trial and at depositions, he would have used the document to "refresh memories and to impeach inaccurate testimony," not as direct evidence (Dkt. #169 at p. 7). Accordingly, the September Memorandum is impeaching.

The September Memorandum is also cumulative of the July Report. The July Report contains findings and conclusions from the Ad Hoc College of Arts and Sciences ("CAS") Grievance Committee (the "Committee") formed to review Plaintiff's complaint that Department Chair Patricia Glazebrook refused to renew Plaintiff's contract (Dkt. #125-10). As Plaintiff attached the July Report to his September 28, 2018, summary-judgment response, the Court assumes Defendant timely produced the July Report.

The September Memorandum is a letter written to Provost Burggren from former members of the Committee addressing three concerns regarding the Committee's July proceedings: (1) Glazebrook's obstructionist behavior before the Committee; (2) the CAS Dean's decision to by-pass the fact-finding function of the Committee; and (3) how Defendant's decision could affect future lecturers (Dkt. #169-2). There are many similarities between the July Report and September Memorandum.

To begin, the authors of the documents are similar. Martin Schwartz, Rebecca Dickstein, Kimi King, Irene Klaver, and Brian Richardson authored the July Report (Dkt. #169-2). Martin Schwartz, Rebecca Dickstein, and Kimi King authored the September Memorandum (Dkt. #125-10). Although the recipients of the documents are different, they are similar in so far as they are high-level administrative staff for Defendant (Dkt. #125-10; Dkt. #169-2).[3]

---

3. Dean Art Goven and Associate Dean Steve Cobb received the July Report while Provost Warren Burggren received the September Memorandum.

The contents of the documents are also similar. Both documents address Glazebrook's obstructionist behavior (Dkt. #125-10 ¶¶ 4(c), 5–8, and at p. 5; Dkt. #169-2 at p. 1). Moreover, both documents state the Committee's view that Plaintiff's termination was "arbitrary and capricious." For example, in the July Report, the Committee found that "Glazebrook's actions were arbitrary an capricious given [Plaintiff's] glowing evaluations from Glazebrook herself . . . ." (Dkt. #125-10 at p. 5). In the September Memorandum, the former Committee members found that the arbitrary and capricious nature of Plaintiff's termination set a precedent that reflected poorly on Defendant (Dkt. #169-2 at p. 2).

The Court is only able to determine one difference between the contents of the documents. In the September Memorandum, the former Committee members lament the CAS Dean's decision to by-pass the Committee (Dkt. #169-2 at pp. 2–3). Although the July Report addresses Glazebrook's failure to follow Defendant's bylaws, it does not address the CAS Dean's decision to by-pass the Committee (*See* Dkt. #125-10). Considering the extent of the similarities between the July Report and September Memorandum, the Court finds that the September Memorandum is largely cumulative of the July Report. As the September Memorandum is cumulative and impeaching, this factor weighs against granting Plaintiff's motion.

### B. Changed the Outcome of Trial

Plaintiff state that the September Memorandum would be "invaluable to Plaintiff's lawyers in deposing defendant's witnesses and in cross examining these witnesses at trial" and Defendant's failure to produce the document was "extremely harmful to Plaintiff in preparing and presenting his case." (Dkt. #169 at p. 9). However, besides the impeaching value identified above, Plaintiff does not explain how the September Memorandum might have changed the outcome of the trial. Overall, the Court agrees with Defendant that much of the information contained in the September

Memorandum was available to Plaintiff from other sources and Plaintiff did, or could have, presented the other sources to the jury (Dkt. #170 at p. 9). Consequently, Plaintiff does not meet his burden of showing that the September Memorandum would have changed the outcome of trial had Plaintiff possessed the document during trial.

### C. Could Have Been Discovered Earlier with Due Diligence

It is difficult for the Court to address the final factor. Plaintiff explains that while Defendant produced nearly 1,000 documents, it did not produce the September Memorandum (Dkt. #169 at p. 7). However, Plaintiff does not state (1) when he received the September Memorandum; (2) whether Defendant eventually produced the document; and, if not, (3) how Plaintiff discovered the document.

Although Defendant is in the best position to clarify why the September Memorandum was not timely produced, Defendant provides no explanation. Instead, Defendant hides behind the burden of persuasion to avoid the issue:

> Regardless, even [Plaintiff] admits that "Defendant produced almost 1000 documents," Dkt. No. 169 at p. 7, while making no effort to outline why this document failed to surface until after [Plaintiff] lost at trial. Given that [Plaintiff] bears the burden of demonstrating that the information could have been discovered earlier with due diligence, [Plaintiff] cannot meet this prong with such a conclusory analysis.

(Dkt. #170 at p. 9).

The Court's Order Governing Proceedings required the parties to produce, "A copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party." (Dkt. #24 at p. 4). As Defendant produced the July Report, the Court assumes Defendant could have also discovered the September Memorandum and would have considered

7

the document relevant. Therefore, the Court finds the September Memorandum could have been discovered with due diligence. However, as the previous two factors did not favor a new trial, the Court finds this final factor—standing alone—does not entitle Plaintiff to a new trial. As a result, Plaintiff does not meet his burden of demonstrating that Defendant's discovery abuse clearly weighs in favor of a new trial.

### III. Jury Confusion

Plaintiff's jury confusion section contains two arguments: (1) the Court should set aside the verdict due to jury confusion and (2) the Court incorrectly charged the jury (Dkt. #169). The Court addresses each argument in turn.

#### A. Jury Conversation

After the trial, the Court allowed counsel to speak with the jurors. Plaintiff now attempts to use the knowledge learned from this conversation to impeach the verdict. Plaintiff explains:

> The foreperson of the jury said that they liked [Plaintiff] and thought he had been wrongly treated. She said that they thought that the wording of Question 1 left them no choice but to rule against [Plaintiff]. She further said that if they had been asked if [Plaintiff] had been wrongfully terminated their answer would have been "yes." All the jurors appeared to agree with the foreperson.

(Dkt. #169 at p. 9). Plaintiff then states, "Counsel for Plaintiff is well aware of the rule that a jury will not be permitted to impeach its own verdict, and that is not what is intended." (Dkt. #169 at p. 10). Yet, in the next sentence, Plaintiff asks the Court to impeach the verdict with the information learned from the jury, "But Jury confusion is a well-recognized basis for a court to set aside the verdict and grant a new trial in the interest of justice. That is what we urge the court to do." (Dkt. #169 at p. 10). Plaintiff cites no authority to support his position.

Plaintiff cannot use the information learned during the post-trial jury conversation to impeach the verdict. Federal Rule of Evidence 606(b) limits the evidence obtained from a juror that a Court may consider during an inquiry into the validity of a verdict. Specifically, the Rule prohibits the Court from receiving evidence from a juror concerning "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." There are only three exceptions provided by the Rule:

> (2) Exceptions. A juror may testify about whether:
>
> (A) extraneous prejudicial information was improperly brought to the jury's attention;
>
> (B) an outside influence was improperly brought to bear on any juror; or
>
> (C) a mistake was made in entering the verdict on the verdict form.

FED. R. EVID. 606(b)(2). Under the Rule, "When a litigant seeks to impeach a jury's verdict, evidence on the private thought processes of individual jurors will not be received." *Carson v. Polley*, 689 F.2d 562, 580–81 (5th Cir. 1982) (citing FED. R. EVID. 606(b)). Moreover, "The subjective thoughts and emotions that may have influenced a juror's deliberations are shielded from inquiry." *Id.* (citations omitted). Although Plaintiff does not address Rule 606(b), Plaintiff argues that the jury mistakenly answered Question 1 "no"—concerning unlawful retaliation under Title IX—due to confusion (Dkt. #162; Dkt. #169 at pp. 9–10). In other words, Plaintiff contends the exception provided by Rule 606(b)(2)(C) applies.

There are at least two issues with Plaintiff's argument. First, the evidence provided represents only the subjective thoughts and emotions of the jurors, which cannot be used to

9

impeach the verdict under Rule 606(b). *See Carson*, 689 F.2d at 580–81. Second, even if the Court could consider the evidence under Rule 606(b)(2)(C), the evidence does not show that the jury was confused or made a mistake.

Plaintiff did not try a wrongful termination case. Instead, Plaintiff sued Defendant alleging retaliation under Title IX (*See* Dkt. #108 ¶¶ 82–92; Dkt. #161; Dkt. #162). The post-trial jury conversation cited by Plaintiff—showing the jury "liked" Plaintiff, felt Defendant treated Plaintiff wrongly, and believed Defendant should not have terminated Plaintiff—is not evidence that the jury believed Defendant retaliated against Plaintiff in violation of Title IX. Instead, it is evidence that although the jury sympathized with Plaintiff, the jury set aside their sympathy—in accordance with the Court's final instructions—and applied the law to the facts to find that Defendant's termination of Plaintiff was not the result of retaliation under Title IX (Dkt. #161 at p. 2).

There is simply no evidence that the jury mistakenly answered Question 1 "no" due to confusion. Instead, Plaintiff improperly attempts to impeach the verdict with the jury's subjective thoughts and emotions in violation of Rule 606(b). *See Carson*, 689 F.2d at 580–81.

### B. Charge and Weight of the Evidence

In the Court's final instructions to the jury, the Court instructed:

> In considering Dr. Wilkerson's claim, you should remember that an employer is entitled to make its own policy and business judgments, even if those judgments are mistaken or wrong. An employer may make those employment decisions as it sees fit, as long as the decision is not caused by unlawful retaliation.

(Dkt. #161 at p. 7). The jury then answered "no" to Question 1 of the verdict form:

> Do you find that Plaintiff Dr. Dale A. Wilkerson's employment would have been renewed by Defendant University of North Texas but for his act of testifying, assisting, or participating in an investigation, proceeding, or hearing under Title IX?

(Dkt. #162 at p. 1).

It is difficult to follow Plaintiff's second argument (*See* Dkt. #169 at pp. 10–11). Plaintiff first seems to suggest that the great weight of the evidence required the jury to answer "yes" to Question 1. Therefore—to explain the jury's "no" answer to Question 1—Plaintiff contends:

> We submit the wording of Question 1, coupled with the submission of an ill-advised instruction on a business's right to terminate an employee's employment if the business in its sole judgment believes that is in its best interest confused the jury.

(Dkt. #169 at p. 10). Plaintiff reasons:

> [N]o unconfused, reasonable jury could have concluded that the lame "business judgment" reason proffered by [Defendant] for firing [Plaintiff] could have overridden [Defendant's] deliberate violation of Title IX's antiretaliation provisions.
>
> . . .
>
> [Therefore, the jury's "no" answer to Question 1] could only have resulted from confusion since the court would not have given the jury a question that based on the evidence as whole could not have been answered either "yes" or "no". For this reason alone the court should grant a new trial.

(Dkt. #169 at pp. 10–11).

Plaintiff's argument does not demonstrate that Plaintiff's motion for new trial should be granted for two reasons. First, as noted above, the Court does not believe the jury was confused. Based on the evidence presented at trial, the jury could sympathize with Plaintiff, believe that Defendant should not—in its business judgment—have fired Plaintiff, and yet still find Defendant

did not terminate Plaintiff because he participated in the Title IX investigation.[4]

Second, Plaintiff likely waived his argument. During the charge conference, Plaintiff requested a Cat's Paw Theory instruction and objected to the Court's inclusion of an instruction concerning Plaintiff's failure to mitigate damages. However, Plaintiff did not formally object to the submission of Question 1 or the business judgment instruction. As Plaintiff does not prove plain legal error in submitting Question 1 with the business judgment instruction, Plaintiff likely waived any argument against the submission of Question 1 or the instruction to the jury. *See* FED. R. CIV. P. 51; *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014) (citing *Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 689 (5th Cir. 2000)).

**IV.    Evidentiary Rulings**

Plaintiff next argues the Court made three erroneous evidentiary rulings that warrant a new trial by excluding: (1) certain voice messages; (2) evidence of widespread wrongdoing in the Philosophy Department; and (3) evidence of Glazebrook's termination (Dkt. #169 at pp. 11–14).[5] Federal Rule of Civil Procedure 61 provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every

---

4. Plaintiff states in the final paragraph of his argument:

    > At closing argument [Defendant] finally went all in and stated that it could terminate [Plaintiff] for any reason it wanted to under its business judgment, even if [Defendant] was wrong. By doing so [Defendant] admits that [Plaintiff] defended himself in a Title IX investigation and [Plaintiff] took action against him regardless.

(Dkt. #169 at p.11). The Court does not believe Defendant admitted liability in this argument. Assuming Defendant learned all the facts in this case from the Title IX investigation, there is simply a difference between unlawfully firing Plaintiff *because he participated in* the Title IX investigation and lawfully firing Plaintiff because—in Defendant's opinion—*he demonstrated poor judgment*.

5. Plaintiff does not state why the Court excluded this evidence.

> stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

"In order to vacate a judgment based on an error in an evidentiary ruling, 'this court must find that the substantial rights of the parties were affected.'" *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994) (quoting *Carter v. Massey–Ferguson, Inc.*, 716 F.2d 344, 349 (5th Cir. 1983)). "An error does not affect substantial rights 'if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict.'" *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) (quoting *Manville Sales Corp.*, 27 F.3d at 1094). Incorrect evidentiary rulings that do not affect a party's substantial rights are harmless error. *Huss v. Gayden*, 571 F.3d 442, 453 (5th Cir. 2009) (citing St. *Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000)).

### A. Voice Messages

The trial involved a sexual harassment complaint made by CB—a graduate student—against Plaintiff, and Defendant's subsequent Title IX investigation of CB's complaint. CB did not testify at trial. As a result, both parties sought to introduce evidence concerning Plaintiff's relationship with CB during the trial.

Plaintiff claims that CB called his phone and left him voice messages. Plaintiff believes these messages show the consensual nature of Plaintiff and CB's relationship (Dkt. #169 at p. 12). Plaintiff filmed himself with a camera while playing CB's voice messages on speaker phone. At trial, Plaintiff sought to introduce the video of him playing the voices messages into evidence as Plaintiff's Exhibit 22. After the Court indicated that it would exclude the evidence as hearsay, Plaintiff's Counsel stated he would withdraw the exhibit.

At trial, Defendant raised a Best Evidence Rule question concerning Plaintiff's exhibit. Plaintiff has not addressed Federal Rule of Evidence 1002 at any point. Rule 1002 provides that, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." An original is not required and the contents of a recording are admissible if:

> (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; (b) an original cannot be obtained by any available judicial process; (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or (d) the writing, recording, or photograph is not closely related to a controlling issue.

FED. R. EVID. 1004. Plaintiff did not offer the original voice messages or explain which of the Rule 1004 exceptions Plaintiff's exhibit might qualify under. Consequently, Plaintiff did not lay a proper foundation for admitting the exhibit.

Even if Plaintiff could satisfy Rule 1002, the voice messages are inadmissible hearsay. Plaintiff explains why he believes the Court erred:

> That evidence demonstrated in her own voice that CB was initiating each conduct that she had with [Plaintiff]. Moreover it was proof positive that she had not been offended by [Plaintiff] on the night of June 2, but was so eager to see him again that she invited herself on the trip to Memphis for the July 2 concert.

(Dkt. #169 at p. 12). At least in part, Plaintiff intended to offer the voice messages for the truth of the matter asserted in the messages—CB wanted to see Plaintiff again and she invited herself on the Memphis trip. Therefore, CB's statements are hearsay as CB did not make the statements while testifying at trial and Plaintiff offered CB's statements to prove the truth of the matter asserted in her statements. *See* FED. R. EVID. 801. Plaintiff has not identified a valid exception to

14

the Rule Against Hearsay at any point that would enable the Court to admit CB's statements into evidence. In fact, Plaintiff cites no legal authority to support his argument that the Court should have admitted CB's messages (*See* Dkt. #169 at p. 12). Instead, Plaintiff only explains that the Court's exclusion this evidence prejudiced him (*See* Dkt. #169 at p. 12). Accordingly, Plaintiff does not demonstrate that the Court's exclusion of CB's messages warrants a new trial.[6]

### B. Philosophy Department

Plaintiff also sought to introduce evidence concerning other sexual harassment allegations in the Department of Philosophy and CAS. Plaintiff believes this evidence demonstrates that Defendant treated the allegation against Plaintiff differently from other, similarly situated, faculty members and, therefore, shows that Defendant's termination of Plaintiff was pretextual (Dkt. #169 at p. 13).

Plaintiff admits that the Court allowed some evidence of other misconduct (Dkt. #169 at p. 13). Specifically, the Court admitted evidence of a different allegation made by CB against another faculty member as well as Defendant's response to this allegation. Even so, Plaintiff argues, "By excluding [the evidence of other allegations made by different students against different faculty members] the Court left the jury without knowledge of the pernicious degree to which [Defendant] allowed its tenured professors to survive allegation after allegation of sexual misconduct without consequence." (Dkt. #169 at p. 13).

Plaintiff's argument does not show substantial harm. The Court admitted evidence that enabled Plaintiff to argue that Defendant treated a similarly situated faculty member differently than Plaintiff. The evidence of allegations made by other students against other faculty members

---

6. Even if Plaintiff could identify a valid exception to the Rule Against Hearsay or offer the messages for some other purpose besides the truth of the matter asserted in the messages, Plaintiff does not explain how the exclusion of CB's messages substantially harmed Plaintiff.

15

is not relevant under Federal Rule of Evidence 401 to whether Defendant terminated Plaintiff because he participated in a Title IX investigation. Even if it were, the evidence should be excluded under Federal Rule of Evidence 403 as its probative value is substantially outweighed by the danger of unfair prejudice to Defendant and its potential to confuse the jury. Finally, the Court agrees with Defendant that these other faculty members are not proper comparators (Dkt. #170 at p. 13–14). Accordingly, the Court finds it did not err in excluding this evidence and Plaintiff's argument does not warrant a new trial.

### C. Glazebrook's Termination

Plaintiff next contends the Court's "exclusion of the circumstances surrounding Glazebrook's termination as Department Chair presented harm to [Plaintiff] because, once again, [Defendant] is able to hide the full view of the situation in the department and the scapegoating, retaliatory nature of [Plaintiff's] termination." (Dkt. #169 at pp. 13–14). Plaintiff continues, "[Glazebrook's] past behavior and the circumstances surrounding her termination as chair would have shown the jury just how retaliatory the actions against [Plaintiff] truly were." (Dkt. #169 at p. 14).

The Court does not find that the exclusion of Glazebrook's termination requires the Court to grant Plaintiff's motion for three reasons. First, Plaintiff does not meet his Rule 59(a) burden because he cites no authority to support his argument that the excluded evidence was admissible. Second, Plaintiff cannot show the exclusion of this evidence affected his substantial rights because although the evidence may show that Glazebrook fired Plaintiff because "she was a bully in constant conflict with nearly every professor," it does not demonstrate that Defendant fired Plaintiff because he participated in the Title IX investigation (Dkt. #169 at p. 14). Third, evidence of Glazebrook's termination was admitted when Plaintiff questioned Dean Goven (Dkt. #170 at

16

pp. 14–15). As a result, the Court's exclusion of evidence concerning Glazebrook's termination does not entitle Plaintiff to a new trial.

## V. Improper Closing Arguments

Plaintiff next maintains that Defense Counsel made two improper closing arguments that require the Court to grant a new trial in this case. First, Plaintiff claims Defense Counsel misstated evidence concerning a BBQ dinner (Dkt. #169 at pp. 5–6). Second, Plaintiff avers that Defense Counsel should not have characterized Plaintiff's relationship with CB as an "assault" or stated that Plaintiff's behavior was "predatory." (Dkt. #169 at p. 14).

"A motion for new trial premised on improper arguments by counsel should only be granted when 'improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions.'" *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (quoting *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988)). "'To justify reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury.'" *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.*, 586 F. App'x. 643, 649 (5th Cir. 2014) (quoting *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985)). "Therefore, closing argument must go far beyond the bounds of accepted advocacy before a court must grant a new trial." *Id.* (citing *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284 (5th Cir. 1975)). To allege prejudice caused by an improper jury argument post-trial, the movant must have raised an objection to the improper jury argument during trial. *Baisden*, 693 F.3d at 509 (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989); *Nissho–Iwai Co., Ltd.*, 848 F.2d at 619).

### A. "The Phantom BBQ Dinner"

Plaintiff argues:

> Opposing counsel said in his closing argument that "all this talk about a BBQ dinner" is a distraction. Yet if this BBQ did not occur, or did not occur when Glazebrook said, then [Defendant's] entire basis that [Plaintiff] knew or should have known he would become the DGS and have supervisory responsibilities with regard to CB falls like a house of cards.

(Dkt. #169 at p. 5).[7] Plaintiff seems to indicate that he disagrees with Defense Counsel's portrayal of the evidence. However, this argument is not a basis for seeking a new trial. The issues in this case turned ultimately on the jury's evaluation of the evidence and the witnesses' credibility. The jury heard the evidence and the parties' arguments. The jury then weighed the evidence. Although the jury may have reached a conclusion that Plaintiff disagrees with, there is no indication that the jury inappropriately weighed the evidence. Plaintiff's "mere dissatisfaction with the jury's weighing of evidence or determination of witness credibility is not a valid ground" for seeking a new trial. *Bovie-Clark v. Sentry Select Ins. Co.*, 568 F. App'x. 312, 313 (5th Cir. 2014).

Even if it could be said that Defense Counsel improperly characterized the evidence regarding the BBQ dinner, Plaintiff makes no attempt to show that Defense Counsel's argument is improper or far beyond the bounds of accepted advocacy (*See* Dkt. #169 at pp. 5–6). As Plaintiff admits, the BBQ dinner timeline issue "is irrelevant because opposing counsel, without any input from a person with actual knowledge transmogrified this matter into a sexual assault." (Dkt. #169 at p. 6).

---

7. Plaintiff did not object to this argument at trial and, therefore, Plaintiff's argument is likely waived. *See Baisden*, 693 F.3d at 509 (citations omitted). Moreover, the Court instructed the jury that "[t]he statements of counsel are not evidence; they are only arguments." (Dkt. #161 at p. 1).

### B. Assault and Predatory Behavior

Plaintiff's final argument is short:

> The Court should grant new trial because opposing counsel made improper or inflammatory statements arguments in front of the jury. [citations omitted].
>
> The exclusion of evidence as detailed above allowed opposing counsel to repeatedly call [Plaintiff's] behavior "predatory," and to characterize the incident as one of assault. Although opposing counsel is free to argue the case, opposing counsel should not be free to call [Plaintiff] a sexual predator when the great weight of the evidence suggests otherwise.

(Dkt. #169 at p. 14). Plaintiff cannot simply claim something is against the great weight of the evidence without citation to the evidence. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Such an argument does not meet Plaintiff's burden to show that Defense Counsel's closing argument irreparably prejudiced Plaintiff's case or gravely impaired the calm and dispassionate consideration of the case by the jury.

Nonetheless, Defendant's closing argument did not go far beyond the bounds of accepted advocacy. The central issue in this case was whether Defendant terminated Plaintiff—a professor—because he participated in the Title IX investigation of CB's allegation of sexual harassment against Plaintiff. Plaintiff argued the evidence showed that Defendant terminated him because Plaintiff chose to defend himself in the Title IX investigation. Defendant argued that it terminated Plaintiff after learning of his relationship with CB because the relationship demonstrated, in Defendant's opinion, Plaintiff's poor judgment. Due to the nature of these claims, both parties sought to characterize Plaintiff's relationship with CB. As mentioned earlier in the discussion concerning CB's voice messages, Plaintiff sought to portray the relationship as

19

consensual. Defendant tried to depict the relationship as predatory. Accordingly, based on the evidence and arguments presented by both sides, Defense Counsel's comments did not go far beyond the bounds of accepted advocacy that might have been expected in this trial.

Even if it did, Plaintiff likely waived his argument by failing to object. The Minute Entry does not reflect that Plaintiff objected at any point during Defendant's closing argument (Dkt. #160). To allege prejudice caused by an improper jury argument post-trial, the movant must have raised an objection to the improper jury argument during trial. *Baisden*, 693 F.3d at 509 (citations omitted). Accordingly, neither of Plaintiff's improper jury argument contentions show that a new trail is warranted.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for New Trial is hereby **DENIED** (Dkt. #169).

**IT IS SO ORDERED.**

SIGNED this 28th day of June, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE